UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY ALAN BRACKSIECK,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,[1]<br><br>Defendant. | No. 2:18-cv-00661 AC<br><br>**ORDER** |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") granting him disability insurance benefits ("DIB") for a closed period from August 11, 2014 through April 28, 2016, and denying him DIB thereafter. Benefits were sought under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34, and under Part A of Title XVIII of the Act, 42 U.S.C. §§ 1395(c) *et seq.*[2] The Commissioner determined that plaintiff had been disabled during the closed period due to a severe spine impairment, but that his disability ceased on April 29, 2016, when he experienced a medical improvement following

---

[1] Andrew M. Saul is substituted as defendant pursuant to Fed. R. Civ. P. 25(d).
[2] Title II provides for DIB to be paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986). Title XVIII, Part A, provides for hospital coverage for those entitled to disability or old-age benefits under the Act. See 42 U.S.C. §§ 1395(c) *et seq.*

1

spinal surgery. For the reasons that follow, plaintiff's motion for summary judgment will be GRANTED, and defendant's cross-motion for summary judgment will be DENIED.

## I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB on September 16, 2014. Administrative Record ("AR") 17.[3] The disability onset date was alleged to be August 11, 2014. Id. The application was disapproved initially and on reconsideration. AR 86-93, 95-103. On September 23, 2016, ALJ Sheila Walters presided over the hearing on plaintiff's challenge to the disapprovals. AR 55-85 (transcript). Plaintiff, who appeared with his counsel, Ms. Langley Kreuze, was present at the hearing. AR 57. Mr. Stephen Schmidt, a Vocational Expert ("VE"), also testified at the hearing. Id.

On December 21, 2016, the ALJ found that plaintiff was disabled from August 11, 2014 through April 28, 2016, but improved following surgery and was no longer disabled as of April 29, 2016. AR 17-30 (decision). On January 22, 2018, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-3.

Plaintiff filed this action on March 9, 2018. ECF No. 1; see 42 U.S.C. § 405(g). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 5, 9. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 14 (plaintiff's summary judgment motion), 14 (Commissioner's cross-motion for summary judgment), 16 (plaintiff's reply).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1959, and accordingly was, at age 55, a "[p]erson of advanced age" under the regulations, 20 C.F.R. § 404.1563(e), when he filed his application. AR 208. Plaintiff has at least a high school education, and can communicate in English. AR 62-63, 203. Plaintiff worked as an estimator for a construction company from 2010 – 2014. AR 203.

////

////

---

[3] The AR is electronically filed at ECF Nos. 7.3 to 7.11 (AR 1 – 537).

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

////

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Disability Insurance Benefits are available for every eligible individual who is "disabled." 42 U.S.C. § 402(d)(1)(B)(ii).  Plaintiff is "disabled" if he is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . . .'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id. § 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id. § 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id. § 404.1520(a)(4)(iv), (e), (f).

4

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id. § 404.1520(a)(4)(v), (g).

If the claimant is found disabled at any point in this process, the ALJ must also determine if the disability continues through the date of the decision. DIB cannot be terminated unless substantial evidence demonstrates medical improvement in the claimant's impairment so that the claimant is able to engage in substantial gainful activity. See 42 U.S.C. § 423(f). The Commissioner has established an eight-step sequential evaluation process under Title II for continuing disability review ("CDR"):

> (1) Are you engaging in substantial gainful activity? If you are (and any applicable trial work period has been completed), we will find disability to have ended (see paragraph (d)(5) of this section).
>
> (2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart? If you do, your disability will be found to continue.
>
> (3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section? If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no decrease in medical severity, there has been no medical improvement. (See step (5).)
>
> (4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step (5). If medical improvement is related to your ability to do work, see step (6).
>
> (5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply. If none of them apply, your disability will be found to continue. If one of the first group of exceptions to medical improvement applies, see step (6). If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.
>
> (6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical

improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521). This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7). When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.

(7) If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.

(8) If you are not able to do work you have done in the past, we will consider whether you can do other work given the residual functional capacity assessment made under paragraph (f)(7) of this section and your age, education, and past work experience (see paragraph (f)(9) of this section for an exception to this rule). If you can, we will find that your disability has ended. If you cannot, we will find that your disability continues.

20 C.F.R. § 404.1594 (2012).[4]

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> 2. **[Step 1 of Disability Inquiry]** The claimant has not engaged in substantial gainful activity since August 11, 2014, the date the claimant became disabled (20 CFR 404.1520(b), 404.1571 *et seq.*).
>
> 3. **[Step 2 of Disability Inquiry]** From August 11, 2014 through April 28, 2016, the period during which the claimant was under a disability, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine, status-post two surgeries (20 CFR 404.1520(c)).
>
> 4. **[Step 3 of Disability Inquiry]** From August 11, 2014 through April 28, 2016, the period during which the claimant was disabled,

---

[4] Many of the regulations cited in this decision were revised effective March 27, 2017. See, e.g., Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5871 (January 18, 2017) (revising 20 C.F.R. § 404.1594). Since the revisions were not in effect at the time of the ALJ's decision, they do not apply to this case.

the severity of the claimant's degenerative disc disease of the lumbar spine, status-post two surgeries, met the criteria of section(s) 1.04A of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 404.1525). **[Thus, plaintiff was disabled.]**

5. The claimant was under a disability, as defined by the Social Security Act, from August 11, 2014 through April 28, 2016 (20 CFR 404.1520(d)).

6. The claimant has not developed any new impairment or impairments since April 29, 2016, the date the claimant's disability ended. Thus, the claimant's current severe impairment is the same as that present from August 11, 2014 though April 28, 2016.

7. **[Step 2 of CDR**] Beginning April 29, 2016, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2)).

8. **[Step 3 of CDR**] Medical improvement occurred as of April 29, 2016, the date the claimant's disability ended (20 CFR 404.1594(b)(1)).

9. **[Steps 4 & 6 of CDR**] The medical improvement that has occurred is related to the ability to work because the claimant no longer has an impairment or combination of impairments that meets or medically equals the severity of a listing (20 CFR 404.1594(c)(3)(i)). **[Accordingly, Step 5 did not apply.]**

10. **[Residual Functional Capacity ("RFC")]** After careful consideration of the entire record, the undersigned finds that, beginning April 29, 2016, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is precluded from climbing ladders, ropes, or scaffolds, and from working around hazards such as unprotected heights, machinery, dangerous equipment and so forth. The claimant could occasionally climb ramps and stairs, and occasionally walk on uneven terrain. The claimant could occasionally balance, stoop, kneel, crouch, or crawl, and should avoid concentrated exposure to extreme cold.

11. [**Step 7 of CDR]** Beginning April 29, 2016, the claimant has been capable of performing past relevant work as an estimator. This work does not require the performance of work-related activities precluded by the claimant's current residual functional capacity (20 CFR 404.1565).

12. The claimant's disability ended April 29, 2016 (20 CFR 404.1594(f)(7)).

AR 20-29.

////

////

# VI. ANALYSIS

Plaintiff argues that the ALJ erred in (1) finding plaintiff medically improved enough to perform light work; (2) evaluating plaintiff's subjective complaints; (3) improperly assessing his lay witness's observations; and (4) finding based on VE testimony that plaintiff could return to his past relevant work as an estimator. Plaintiff requests that the matter be remanded to the Commissioner for payment of benefits, or in the alternative, for further proceedings with the appropriate corrective instructions. ECF No. 14.1 at 20-32.

## A. The Finding that Plaintiff Was No Longer Disabled as of April 29, 2016 Is Not Supported by Substantial Evidence

"A Social Security disability benefits claimant is no longer entitled to benefits when substantial evidence demonstrates (1) 'there has been any medical improvement in the [claimant's] impairment' and (2) the claimant 'is now able to engage in substantial gainful activity.'" Attmore v. Colvin, 827 F.3d 872, 873 (9th Cir. 2016) (quoting 42 U.S.C. § 423(f)(1)). This standard applies both to independent termination of benefits cases arising under the Commissioner's periodic continuing review of claimants' disability, and to "closed period" cases—such as this one—where "the ALJ finds in a single decision that the claimant was disabled for a closed period of time but has since medically improved." Id. at 873-74. The court finds that in this case, the first element was supported by substantial evidence, but the second element was not.

### 1. There Was Substantial Evidence of Medical Improvement

Medical improvement is defined as "any decrease in the medical severity" of a claimant's impairment, and any determination to that effect "must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)." 20 C.F.R. § 404.1594(b)(1).

Under the governing regulation, to determine whether there has been medical improvement, an ALJ must "compare the current medical severity" of the claimant's impairment to the medical severity of the impairment "at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R.

§ 404.1594(b)(7). In closed period cases—which provide no separate "most recent favorable medical decision" for comparison—"an ALJ should compare the medical evidence used to determine that the claimant was disabled with the medical evidence existing at the time of asserted medical improvement." Attmore, 827 F.3d at 874.

"Once a claimant has been found to be disabled, . . . a presumption of continuing disability arises in her favor." Bellamy v. Sec'y of Health & Human Servs., 755 F.2d 1380, 1381 (9th Cir. 1985). The Commissioner then "bears the burden of producing evidence sufficient to rebut this presumption of continuing disability." Id.; Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983) ("[t]he Secretary . . . has the burden to come forward with evidence of improvement").[5] However, the burden remains on the claimant "to prove her case." Patti v. Schweiker, 669 F.2d 582, 587 (9th Cir. 1982). "All the presumption does is impose on the [Commissioner] a burden to come forward with evidence that her condition has changed." Id. As stated above, the Commissioner's judgment on that issue is reviewed under the "substantial evidence" standard. Id.; see McCalmon v. Astrue, 319 F. App'x 658, 659-60 (9th Cir. 2009)

---

[5] Certain amendments to the Act became effective on October 9, 1984, after Bellamy had been argued and submitted. Medina v. Colvin, No. 14-CV-01967-DMR, 2015 WL 5448498, at *9–10 (N.D. Cal. Aug. 21, 2015). As amended, the Act now provides:

> Any determination made under this section shall be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled.

42 U.S.C. § 423(f). Bellamy did not take the 1984 amendments into consideration, and courts have expressed uncertainty as to whether the above addition eliminated the presumption of continuing disability. See Medina, 2015 WL 5448498, at *9–10. However, the Ninth Circuit reaffirmed the existence of the presumption, albeit in dicta, in Parra v. Astrue, 481 F.3d 742, 748 (9th Cir. 2007) ("[T]he Commissioner's burden in termination cases stems from the notion that '[o]nce a claimant has been found to be disabled [ ] a presumption of continuing disability arises in [his] favor.'") (quoting Bellamy, 755 F.2d at 1381) (alterations in original). Thus, the court concludes, as have others, that the presumption remains valid in this circuit. See Medina, 2015 WL 5448498, at *10 (discussing distinction between an "inference" and a "presumption"); Palacios v. Astrue, No. 10-cv-1743-AJW, 2012 WL 601874, at *2–3 (C.D. Cal. Feb. 23, 2012) (following Bellamy and Parra, and noting that a "presumption of continuing disability" does not create "a substantive 'inference' of continuing disability.").

(unpublished) (holding that while the Commissioner bears the burden of establishing medical improvement, the court may only set aside the ALJ's decision when it "is not supported by substantial evidence or . . . is premised on legal error") (citing Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005)).

*a. Summary of the Relevant Medical Improvement Evidence*

The medical evidence consists of records from 2012 through 2017 of plaintiff's treatment for degenerative disc disease, which caused him chronic lower back pain and bilateral leg pain.[6] From 2012 through 2014, plaintiff was diagnosed with chronic low back pain and radiating pain and neuropathy in both legs; he routinely had positive straight-leg raising tests; and several MRIs indicated nerve root impingement. AR 254-65, 255, 266, 374-75, 394, 397-98, 401-21, 425, 454, 523. Various records refer to a 2007 laminectomy[7] of plaintiff's L4-5 vertebrae, but the record does not contain original medical records from that procedure. AR 254, 365, 490, 519. In addition, plaintiff received chiropractic adjustments, epidural steroid injections, lumbar branch blocks, and a steady regimen of oxycodone. AR 254-65, 374-75, 394-95, 428, 430-32. Plaintiff was treated by Dr. Jeff Jones from August 2013 through May 2015. At an October 2014 visit, Dr. Jones noted that plaintiff's "[a]ctivity levels have been affected by pain, has to rest frequently, activities like coming to his doctors appointments is becoming very difficult [sic]." AR 438-39. Dr. Jones also noted that plaintiff experienced "excellent relief of his low back pain" following the branch blocks, but "his main complaint is of leg pain." Id. In December 2014, plaintiff complained of constant aching and sensation of electrical currents in his legs; he could only stand and walk for 5-10 minutes at a time; and he stressed that leg pain was his chief complaint. AR 449. Because the branch blocks and epidural injections did not provide significant long-term

////

---

[6] The evidence includes medical records considered by the ALJ and medical records submitted only to the Appeals Council as part of plaintiff's appeal, both of which are properly before the court for review. See Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993) (courts consider "both the ALJ's decision and the additional material submitted to the Appeals Council").

[7] Laminectomy is surgery that creates space by removing the lamina—the back part of a vertebra that covers the spinal canal. Also known as decompression surgery, laminectomy enlarges the spinal canal to relieve pressure on the spinal cord or nerves.

relief for his leg pain, Dr. Jones recommended that plaintiff see neuro spine surgeon Dr. David Bybee for surgical evaluation. AR 447.

On January 29, 2015, Dr. Jones completed a Medical Assessment of Ability to Do Work-Related Activities form, opining—based on an in-person physical exam—that plaintiff could stand for 1 hour but only for 5 minutes without interruption; walk for 1 hour but only for 30 minutes without interruption; sit for 3 hours in an 8-hour workday but only for 30 minutes without interruption; lift up to 20 pounds occasionally (and never over 20 pounds); and carry up to 10 pounds occasionally. AR 462-66.

In September 2015, plaintiff was examined by the surgeon, Dr. Bybee, who discussed with him the option of undergoing an L5-S1 fusion. AR 491. Plaintiff sought a second opinion, but in January 2016, he expressed to Dr. Jones that he was ready to proceed with surgery. AR 482. At that visit, Dr. Jones noted that plaintiff could still only stand and walk for 5-10 minutes at a time and needed 6 oxycodone per day for the pain. Id.

On March 28, 2016, Dr. Bybee performed an anterior lumbar interbody fusion of L4-L5 and L5-S1 on plaintiff. AR 496-97. On April 28, 2016, at his first post-operative visit, plaintiff reported that his pain was "manageable," he was taking 4 oxycodone per day, and he had been walking around the track. AR 510. He reported that after walking he had "some bilateral hip pain that calms down after he rests," and that "[o]verall he is feeling quite well and optimistic." Id. A diagnostic report from an x-ray taken on June 13, 2016 found "normal alignment without definite hardware failure, loosening or other hardware complication"; "[d]isc height is adequately maintained"; and "[s]oft tissues are otherwise unremarkable." AR 504. At a June 14, 2016 follow-up visit, plaintiff reported that he was "still getting that intermittent tingling and numbness in the legs when he walks around for a period of time, but he has absolutely no back pain, other than when he takes the brace off and sits for a long period of time." AR 508. Dr. Bybee noted that plaintiff was "walking independently erect upright without list or difficulty," and that the x-ray showed that the surgical instrumentation remained "in excellent position." Id.

On September 8, 2016, plaintiff reported to Dr. Bybee feeling "frustrated" and as though he was "going backwards with his recovery." AR 516. According to Dr. Bybee's notes:

> Whereas before he was able to do 3 laps around a particular area that he had mapped out for exercise now he can barely make it around all 3 laps when his hip area or medial buttock and thigh area is really hurting him badly. When he is still not walking he is feeling quite comfortable and in fact volunteers he has absolutely no back pain compared to his preoperative status. This is obviously gratifying but unfortunately the above described symptoms are discouraging for him. He continues to require oxycodone without which he says he could not get up and around.

Id. Dr. Bybee recommended a 10-day trial of maximum dose ibuprofen to calm the pain. Id.

New evidence submitted to the Appeals Council included plaintiff's treatment records from Dr. Raghunath Reddy over September 20, 2016 through February 8, 2017. AR 35-55. On September 21, 2016, plaintiff complained of pain in both legs, was assessed with "chronic back pain," and was prescribed oxycodone. AR 48, 50. The nurse practitioner checked boxes indicating that plaintiff's skin, neck, extremities, and other examination features were "normal." AR 48. On November 23, 2016, plaintiff reported that his legs and back hurt, that his feet got numb when he walked, that he was awoken by pain at night, and that he took oxycodone for the pain with little relief. AR 41. Dr. Reddy assessed lower back tenderness, chronic lower back and leg pain, and neuropathy of both feet. Id. On December 22, 2016, Dr. Reddy refilled plaintiff's oxycodone prescription, again assessing plaintiff with "chronic back pain." AR 39. At the last medical appointment in the record, on February 8, 2017, plaintiff complained of worsening hip pain due to cold weather, and stated that the "back of [his] legs hurt so bad that [he] can't even stand." AR 37. He was instructed to lose weight, and his oxycodone prescription was refilled. AR 38.

### b. *The ALJ's Medical Improvement Findings*

As described above, the ALJ found that during the period from August 11, 2014 through April 28, 2016, plaintiff suffered from degenerative disc disease of the lumbar spine which met the criteria of Listing 1.04A (disorders of the spine), 20 C.F.R. Pt. 404, Subpt. P, App. 1, and plaintiff was therefore disabled during that period. AR 21-25. This finding was based on Dr. Jones's opinions and the pre-surgery MRIs showing nerve root impingement. Id. However, the ALJ found that, following the second spinal surgery in March 2016, plaintiff's impairment—while still "severe"—no longer met the criteria of Listing 1.04A as of April 29, 2016, because

plaintiff "experienced significant pain relief and the objective evidence no longer reveals evidence of nerve root compression." AR 25-26.

### c. Analysis

The court concludes that the ALJ's finding of medical improvement, while debatable, was supported by substantial evidence and therefore must be upheld. The ALJ's comparison of the pre-2016 surgery MRIs and the post-surgery x-ray provided the necessary "improvement in the . . . laboratory findings" associated with the impairment to support a "decrease in the medical severity" of plaintiff's condition. See 20 C.F.R. § 404.1594(b)(1). The absence of continued nerve root compression after the 2016 surgery provided sufficient "evidence of a changed condition" to satisfy the Commissioner's evidentiary burden and overcome the presumption that plaintiff's disability continued. See Patti, 669 F.2d at 587. Whereas before surgery, plaintiff could only stand and walk for 5-10 minutes at a time, some five months after the surgery in September 2016, he was able to walk three laps around a track, albeit with difficulty, and he reported feeling "quite comfortable" when he was still. AR 516. Although back pain was not his primary complaint leading up to surgery, the fact that he felt "absolutely no back pain compared to his preoperative status" (AR 516) further supports the ALJ's finding of medical improvement. Plaintiff relies on the post-hearing evidence from his visits with Dr. Reddy to establish that his leg pain and numbness returned and/or continued. While this evidence is of course relevant to the ultimate disability finding, it does not outweigh the other evidence of overall improvement in plaintiff's impairment. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("The key question [for a medical improvement determination] is not whether the claimant still suffered from the same medical problem he had when benefits were awarded, but whether the severity of the problem had decreased sufficiently to enable him to engage in gainful activity.").

### d. No Work-Relatedness Inquiry Was Required

Typically, in order to find that a claimant is no longer disabled, the Commissioner must also establish that the "medical improvement is related to [the claimant's] ability to work." 20 C.F.R. § 404.1594(a), (b). Plaintiff takes issue with the ALJ's failure to include any analysis on this point. ECF No. 14.1 at 18-21. However, the same regulation expressly states that such

analysis was not required in this case.  Section 404.1594(c) provides that if plaintiff was found disabled "based on the fact that [his] impairment(s) at the time met or equaled the severity contemplated by the Listing of Impairments," and "[i]f there has been medical improvement to the degree that the requirement of the listing section is no longer met or equaled, then the medical improvement is related to [the claimant's] ability to work." 20 C.F.R. § 404.1594(c)(3)(i) (2012). Plaintiff does not challenge the ALJ's finding that he no longer met Listing 1.04A after the March 2016 surgery.  Because the ALJ's finding of medical improvement was based on plaintiff no longer meeting the Listing criteria, there was no obligation to analyze separately whether the improvement was related to plaintiff's ability to work.  Id.  There was no error in the ALJ proceeding directly to analyze plaintiff's current residual functional capacity.  The court turns next to review of that analysis.  See id. ("We must, of course, also establish that you can currently engage in gainful activity before finding that your disability has ended.").

### 2. The RFC Finding Is Not Supported by Substantial Evidence

All of plaintiff's remaining arguments—regarding the weighing of medical opinion evidence, the evaluation of plaintiff's subjective complaints and his lay witness observations, and the VE testimony—relate to the ALJ's residual functional capacity ("RFC") determination.  After finding medical improvement, the Commissioner still bore the burden to show that plaintiff was currently able to engage in substantial gainful activity.  See Carlson v. Shalala, 841 F. Supp. 1031, 1037 (D. Nev. 1993) ("If the Secretary finds medical improvement related to the claimant's ability to do work, the burden shifts to the Secretary to further show that the claimant is currently able to engage in substantial gainful activity before the Secretary can find that the claimant is no longer disabled.").

This case is somewhat anomalous in that the ALJ found at step 3 that plaintiff was disabled during the closed period because he met Listing 1.04A, and consequently the ALJ did not need to assess plaintiff's RFC prior to finding plaintiff disabled.  See five-step sequential evaluation, supra.  The ALJ only undertook an RFC evaluation after finding that plaintiff's condition had medically improved and that plaintiff no longer met Listing 1.04A.  AR 26.

////

Therefore, the ultimate issue is whether the ALJ's sole RFC determination is supported by substantial evidence.

RFC is the ability to do physical and mental work activities on a sustained basis despite limitations from impairments. 20 C.F.R. § 416.920(e). It is the ALJ's responsibility, not a doctor's, to determine a claimant's RFC. 20 C.F.R. § 404.1546(c); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001). However, the finding must be supported by substantial evidence in the record and the ALJ must explain her reasoning behind the RFC. 42 U.S.C. § 405(b); 20 C.F.R. § 416.920(c).

As previously described, the ALJ's RFC finding was as follows:

> After careful consideration of the entire record, the undersigned finds that, beginning April 29, 2016, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[8] except the claimant is precluded from climbing ladders, ropes, or scaffolds, and from working around hazards such as unprotected heights, machinery, dangerous equipment and so forth. The claimant could occasionally climb ramps and stairs, and occasionally walk on uneven terrain. The claimant could occasionally balance, stoop, kneel, crouch, or crawl, and should avoid concentrated exposure to extreme cold.

AR 26.

### a. The RFC Was Unsupported by a Current Medical Opinion

Plaintiff argues that the RFC determination is not supported by substantial evidence, in part because the ALJ gave inconsistent degrees of weight to the outdated medical opinions of State agency medical consultants, Drs. Blando and Harris, both of whom only reviewed plaintiff's case before his March 2016 surgery. ECF No. 14.1 at 23-24. Dr. Blando reviewed the medical evidence on October 31, 2014 as part of the agency's initial review. AR 92. Dr. Blando opined

---

[8] 20 C.F.R. § 404.1567(b) provides that:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

15

that plaintiff was limited to lifting 20 pounds occasionally and 10 pounds frequently, standing or sitting about 6 hours in an 8-hour workday, and that he was limited in his ability to push and pull in both lower extremities. AR 90. She stated this was "[d]ue to back pain complaints and radicular symptoms, bil[ateral lower extremity] with freq p/p." Id. In her explanatory notes, Dr. Blando stated that plaintiff's exacerbated pain complaints improved with steroid injections and adjustment of his pain medication in August 2014; noted that plaintiff continued to complain of pain but remained "neurologically intact"; and found sufficient evidence to provide that plaintiff was "projected to improve to the baseline light RFC level." AR 92. Dr. Harris, on reconsideration, reviewed the evidence on February 23, 2015 and made identical findings as to plaintiff's limitations. AR 99-101.

In finding plaintiff disabled during the closed period from August 11, 2014 through April 28, 2016, the ALJ gave "little weight" to the medical consultants' opinions, finding them "inconsistent with the medical evidence" because plaintiff suffered such significant pain that he required a second back surgery. AR 24. However, in determining plaintiff's RFC beginning April 29, 2016, the ALJ gave these same opinions "considerable weight . . . as they pertain to the period after April 28, 2016." AR 28. The ALJ found Drs. Blando's and Harris's opinions consistent with plaintiff's activities of daily living; positive response to treatment, including the March 2016 surgery; and plaintiff's ability to walk around a track following the surgery. Id. The ALJ concluded that, "[i]n sum, the above [RFC] assessment, for the period after April 28, 2016, is supported by the weight of the medical evidence and the opinions of Drs. Blando and Harris." Id.

The court concludes that the medical opinions by Drs. Blando and Harris—offered more than one year prior to the post-surgery period at issue—do not constitute substantial evidence to support the RFC determination. Neither consultant had the opportunity to review the medical records leading up to, and directly following, plaintiff's surgery. The ALJ essentially rejected their opinions for the pre-surgery period because they were inconsistent with the pain plaintiff ultimately experienced; and there is no basis on which to conclude that plaintiff's current RFC should match Dr. Blando's "projected" RFC assessment offered one-and-a-half years before his back surgery. Notably, the ALJ assigned "little weight" to treating physician Dr. Jones's opinions

in relation to the post-improvement period, although she had given "great weight" to Dr. Jones in relation to the closed period. AR 24, 28. In rejecting Dr. Jones's opinions for the post-improvement RFC, the ALJ reasoned that the opinions were provided before the March 2016 surgery and therefore did not account for plaintiff's response to surgery and subsequent treatment. AR 28. Precisely the same can be said for the State agency medical consultants' opinions.

Having concluded that the medical consultants' opinions are inapplicable to the post-surgery/post-improvement period, it is evident that the record contains no medical opinion regarding plaintiff's functional limitations at any point during the six months between his surgery and the hearing before the ALJ. While there are certainly medical records from this period— including the June 2016 x-ray findings and notes from plaintiff's three follow-up visits with Dr. Bybee—none of them constitutes a medical opinion regarding plaintiff's functional limitations. Dr. Bybee's notes reflect plaintiff's self-reported symptoms and activities, but they do not include interpretations of the x-ray findings with respect to plaintiff's functional limitations, or any other medical opinion as to plaintiff's abilities. AR 502, 504, 510, 516.

In the absence of any current medical opinion on plaintiff's limitations, the court must conclude that the ALJ improperly arrived at an RFC based on her own lay interpretation of the post-surgery medical records. "[A]n ALJ is not qualified to interpret raw medical data in functional terms." Perez v. Sec'y of Health & Human Servs., 958 F.2d 445, 446 (1st Cir. 1991) (per curiam). "[W]here an ALJ reaches conclusions about claimant's physical exertional capacity without any assessment of residual functional capacity by a physician, the ALJ's conclusions are not supported by substantial evidence and it is necessary to remand for the taking of further functional evidence." Id.; see Padilla v. Astrue, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam), and citing Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)); see also Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) ("Without a personal medical evaluation it is almost impossible to assess the residual functional capacity of any individual.").

Courts in this circuit have found it reversible error to determine a plaintiff's RFC without a medical opinion. See Loza v. Berryhill, No. 1:17-CV-0598 JLT, 2018 WL 4350071, at *6-8

(E.D. Cal. Sept. 10, 2018) (remanding for further proceedings where no physician reviewed objective imaging results and consultative exam occurred prior to relevant time period, finding that ALJ rendered her own medical findings that plaintiff could perform light work); Kohlbatz v. Berryhill, No. EDCV 17-1157 JC, 2018 WL 2059645, at *4-5 (C.D. Cal. Apr. 30, 2018) (remanding for further proceedings where ALJ rejected all medical source opinions and based the RFC on ALJ's own lay interpretation of the medical record overall); Perez v. Comm'r of Soc. Sec., No. 1:17-CV-00112-SAB, 2018 WL 721399, at *8-9 (E.D. Cal. Feb. 6, 2018) (remanding for further proceedings because court was unable to determine how ALJ concluded plaintiff was capable of light work without specific support from a medical source).

### *b. The Court Declines to Address the Remaining RFC Issues*

Since this matter is being remanded for further evaluation of the medical evidence which may affect the Commissioner's treatment of the remaining issues, the court declines to further address the arguments related to the RFC finding. Because there was insufficient evidence that plaintiff is now able to engage in substantial gainful activity, the ALJ's conclusion that plaintiff was no longer disabled as of April 29, 2016 is not supported by substantial evidence.

### B. Remand for Further Proceedings Is Warranted

The ordinary remand rule provides that when "the record before the agency does not support the agency action, . . . the agency has not considered all relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). This applies equally in Social Security cases. Id. at 1099. In Social Security cases, courts generally remand with instructions to calculate and award benefits when it is clear from the record that the claimant is entitled to benefits. Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014).

In this instance, the court finds that the record has not been sufficiently developed to determine what, if any, functional limitations plaintiff has due to his severe impairments. Accordingly, this action shall be remanded for further development of the record. On remand, the

ALJ shall obtain physician review of the medical evidence subsequent to the agency determination that plaintiff experienced medical improvement as of April 29, 2016 to determine the limiting effects of plaintiff's impairments in determining his residual functional capacity.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14), is GRANTED, and this matter is REMANDED for further administrative proceedings consistent with this opinion;

2. The Commissioner's cross-motion for summary judgment (ECF No. 15), is DENIED; and

3. The Clerk of the Court shall enter judgment in favor of plaintiff and against defendant, and close this case.

IT IS SO ORDERED.

DATED: June 20, 2019

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE